**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0970-17T3

IN THE MATTER OF
CLAUDIO TUNDO, BOROUGH
OF RINGWOOD DEPARTMENT
OF PUBLIC WORKS.

_____

Submitted May 29, 2019 – Decided October 7, 2019

Before Judges Suter and Geiger.

On appeal from the New Jersey Civil Service Commission, Docket Nos. 2015-3158, 2016-3249 and 2016-3197.

Mark B. Frost & Associates, attorney for appellant Claudio Tundo (Ryan Marc Lockman, on the brief).

Kaufman Semeraro & Leibman LLP, attorneys for respondent Borough of Ringwood (Justin D. Santagata, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Civil Service Commission (Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Petitioner Claudio Tundo appeals from the September 25, 2017 final agency decision of the Civil Service Commission (CSC) that affirmed the termination of his employment by the Borough of Ringwood (Ringwood) on grounds of insubordination, chronic absenteeism, neglect of duty, abuse of sick leave and conduct unbecoming a public employee. We affirm the Final Administrative Action of the CSC because it was supported by the evidence and was not arbitrary, capricious or unreasonable.

I.

Petitioner was employed fulltime by Ringwood in its Public Works Department as a Laborer I beginning in March 2013. Part of his duties involved responding to winter emergencies by driving a snow plow.

Ringwood's February 2016 Preliminary Notice of Disciplinary Action (PNDA) notified petitioner that it sought his removal from this position. It charged him with insubordination, inability to perform duties, chronic absenteeism, neglect of duty, abuse of sick leave, conduct unbecoming a public employee and other sufficient cause. The PNDA stated that on February 15, 2016, petitioner was "called to come in and plow and declined to do so," although a "prolonged snow and ice storm was predicted." Petitioner was absent again on February 16, 2016, "because of ice." The PNDA stated that petitioner

had a "long history of abuse of sick and personal time dating back to November 2014" and that another PNDA was pending a hearing based on his "multiple absences."

Petitioner requested a departmental hearing. Following that, a Final Notice of Disciplinary Action notified him that the charges were sustained and he was removed effective February 26, 2016. Petitioner appealed to the CSC. The case was transmitted to the Office of Administrative Law (OAL) for a hearing.[1]

The Administrative Law Judge's (ALJ) Initial Decision found that certain charges against petitioner had been proven and others not. There was no dispute that under the Collective Negotiations Agreement (CNA), petitioner was allotted fifteen sick days a year, five of which could be used as personal days. From 2013 until his termination, he used the majority of his sick and personal leave days.[2]

---

[1] Petitioner appealed two other suspensions. These were consolidated at the OAL with the removal action. Subsequently, petitioner withdrew his challenge to the two suspensions.

[2] His sick time ended with a balance in 2013 of 0.64 days and no personal days; he had a deficit of 3.50 days in 2014 and a one-day deficit for personal days; in 2015, he had a balance of 0.50 days for sick and personal, and had used 5.0 sick days and a half of a personal day in 2016.

A-0970-17T3

In 2013, many of the sick days that petitioner used occurred on a Monday, Friday or before a holiday. In 2014, his use of sick days still was occurring on Mondays, Fridays and the day after a holiday, although there were some other days used for sick time also. Petitioner was assigned to light duty at one point, but did not attend work at all. By 2015, the use of sick days by petitioner were more dispersed throughout the week. Then in January 2016, he used five and a half days, three of which were on a Monday or Friday.

Ringwood's Borough Manager testified that petitioner had not responded to requests for medical documentation about his absences. The Payroll Administrator testified that petitioner had only nineteen hours of overtime during his employment, while other employees had hundreds of hours.

Petitioner did not assist with emergency snow plowing on March 2, 2015, or on January 11 and 12, 2016. He used sick days on January 22 and 25, 2016, during a major snow storm. It snowed again on February 15 and 16, 2016. Petitioner declined to go to work on the 15th, according to his employer, but he testified he was not asked to report. Petitioner testified he could not work on February 16, 2016, because his all-wheel drive vehicle slid into a curb. Petitioner's supervisor testified that other public works employees were able to

A-0970-17T3

attend work that day, including those that travelled further. As a result, other employees had to cover petitioner's route.

The ALJ found that petitioner declined to report to work on February 15, 2016, but because that day was a holiday in a week in which he was not on the snow emergency standby schedule, he was permitted under the CNA to decline the work. However, the next day when he did not attend work because of the icy road conditions, the ALJ did not find his testimony to be credible because other public works employees were able to report to work that day.

No one disputed petitioner's disciplinary record. He had received written warnings in 2014, 2015 and 2016; a four-day suspension in 2015, a seven-day suspension in 2015, and a fifteen-day suspension in 2016. He was serving this fifteen-day suspension when he was removed from his employment on February 26, 2016. All of this related to attendance issues.

The ALJ concluded the charge of chronic absenteeism should be dismissed. Petitioner had been disciplined for his attendance record in 2014, but in 2015 his attendance improved. Petitioner's use of sick time in 2016 was "substantial for one month, but well within his annual allotment."

However, the abuse of sick time charge was proven based on testimony that petitioner "failed to produce adequate medical documentation for some of

the absences," and that his use of sick days in 2016 "showed a clear pattern of corresponding to snow events." Also, petitioner was insubordinate because he failed to provide documentation about his absences that the employer had requested.

The ALJ concluded the neglect of duty charge was sustained because petitioner used sick days that "corresponded with snow events. . . . [A]nd the effect of his absence was that his work had to be assigned to other employees." In addition, his use of sick days for snow events was "conduct unbecoming a public employee" because the ALJ "infer[red] that [petitioner's] absences adversely affected the morale and efficiency of [Ringwood's] Department of Public Works." He dismissed the remaining charges that petitioner was not able to perform his duties and the charge of other sufficient cause.

The ALJ found the charges "warrant[ed] disciplinary action" because petitioner "abused his sick time by using sick days to avoid working during snow events." However, "progressive discipline would be appropriate for this case" because it did not "involve the type of severe misconduct where one incident would warrant removal." Finding that removal would be "grossly excessive," the ALJ recommended a three-month suspension.

A-0970-17T3

On September 25, 2017, the CSC's Final Administrative Action affirmed the ALJ's findings of insubordination, abuse of sick time, neglect of duty and conduct unbecoming a public employee. It agreed that the charges of inability to perform duties and other sufficient causes properly were dismissed. However, the CSC disagreed with ALJ's finding that the charge of chronic absenteeism had not been proven, and it disagreed with the ALJ's penalty recommendation, finding that termination from employment was warranted rather than a three-month suspension.

On the insubordination charge, the CSC found that petitioner did not provide documentation for absences as he had been requested. Petitioner's use of sick time showed a pattern of using days on Mondays, Fridays, after holidays and on snow event days. He used sick time even though the doctor had restricted him to light duty. The neglect of duty and conduct unbecoming charges were sustained because the appointing authority had to reassign his duties to others, which affected the morale and efficiency of the staff.

The CSC rejected the ALJ's finding about chronic absenteeism. It found the record was "replete with a pattern of his use of leave time to shirk his duties, particularly the crucial public safety function of snow removal." Petitioner had been warned repeatedly between November 2014 and January 2016. By

7

February 16, 2016, petitioner had "used nearly half of his sick leave days for 2016 in approximately one-and-a-half months." All of the days "corresponded to snow events. Viewed in that light, [the CSC found] the February 16, 2016 absence . . . support[ed] the charge of chronic or excessive absenteeism."

The CSC ordered petitioner's termination from employment—not suspension—because the "charges that were sustained [were] serious." It concluded his "pattern of using sick time after a snow event or to extend a weekend or holiday [was] clearly disruptive to the appointing authority' work operations, particularly the vital public safety function of snow removal, given that those duties had to be reassigned to other employees." The CSC considered his history of progressive discipline consisting of one minor disciplinary action, and two major disciplinary actions within a three-year period for similar infractions in concluding to terminate his employment.

Petitioner appeals from the Final Administrative Action. Petitioner argues his employment should be reinstated with back pay because termination of employment was not appropriate for the infractions, was contrary to the facts found by the ALJ and did not accord with the law of progressive discipline.

II.

We will not set aside an agency's action unless "there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." In re Herrmann, 192 N.J. 19, 27-28 (2007); see also Karins v. City of Atl. City, 152 N.J. 532, 540 (1998). We have applied such deference when reviewing determinations of the CSC, or of its predecessor agencies that have administered the civil service laws. See, e.g., Campbell v. Dep't. of Civil Serv., 39 N.J. 556, 562, 578 (1963); Falcey v. Civil Serv. Comm'n, 16 N.J. 117, 125 (1954); In re Sheriff's Officer (PC2209J), 226 N.J. Super. 17, 21-22 (App. Div. 1988).

There was nothing arbitrary, capricious or unreasonable about the CSC's final decision because it was supported by substantial credible evidence. The CSC adopted the ALJ's findings except on the charge of chronic absenteeism. We have carefully reviewed this record, finding the CSC had support to sustain this charge. There was a pattern of absenteeism that related to snow events. This affected the Department because other employees had to perform this work. Petitioner was warned repeatedly about the importance of these functions for the public and the need to attend work. Although petitioner may have made some improvement between 2014 and 2015, we cannot say that the CSC was arbitrary,

capricious or unreasonable on this record in terminating petitioner's employment where the pattern of absences continued. We are not to substitute our judgment for that of the CSC because there was ample evidence to support its findings and conclusions. See In re Carter, 191 N.J. 474, 483 (2007). Plainly, petitioner's "past record could properly be considered in fashioning the 'appropriate penalty for the current specific offenses[.]'" In re Stallworth, 208, N.J. 182, 196 (2011) (quoting Town of West New York v. Bock, 38 N.J. 500, 523 (1962)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0970-17T3